```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          *

     vs.                          *    CRIMINAL NO. MJG-16-0324

ATIF BABAR MALIK, ET AL.          *

*    *    *    *    *    *    *    *    *
                    MEMORANDUM AND ORDER
```

The Court has before it Atif B. Malik, M.D.'S Motion for a Judgment of Acquittal or a New Trial [ECF No. 283] and the materials submitted relating thereto.[1] The Court finds that a hearing is unnecessary.

I. Introduction

After an eleven day trial, on October 27, 2017 a jury found Defendant Atif Babar Malik ("Dr. Malik" or "Defendant") guilty on each of the 26 Counts that were tried (Counts One to Seventeen and Nineteen to Twenty-Seven),[2] including charges of conspiracy to violate the Anti-Kickback Act ("AKA") and the Travel Act, receipts of unlawful remuneration from violations of the AKA, violations of the Travel Act, and health care fraud.

---

[1] The Government filed an Opposition [ECF No. 342] to which Defendant Malik's current counsel have advised that they do not intend to reply. See ECF No. 365.

[2] Count Eighteen (conspiracy to defraud the I.R.S.) remains pending. Trial is currently scheduled for September 24, 2018.

II.  LEGAL STANDARDS

By the instant motion, Defendant Malik seeks acquittal or a new trial on all Counts of conviction by virtue of Rules 29 and 33 of the Federal Rules of Criminal Procedure.

A.  Acquittal

Rule 29(a) of the Federal Rules of Criminal Procedure provides in relevant part:

> After the . . . close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

When the Defendant moves for acquittal under Rule 29, the Court considers whether "as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." United States v. Riley, 21 F. Supp. 3d 540, 543 (D. Md. 2014) (quoting United States v. Alvarez, 351 F.3d 126, 129 (4th Cir.2003)).  The Court considers whether "a rational trier of fact could find the Defendant guilty beyond a reasonable doubt based on the evidence produced at trial, viewed in the light most favorable to the Government." Id. (quoting United States v. Wilkins, 58 Fed.Appx. 959, 961 (4th Cir.2003)).

B. New Trial

Rule 33(a) of the Federal Rules of Criminal Procedure provides in relevant part:

> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.

The Court applies a five-part test to determine if a defendant has established entitlement to a new trial based on newly discovered evidence. This test requires the Court to ask:

(i) [I]s the evidence, in fact, newly discovered;
(ii) [A]re facts alleged from which the court may infer due diligence on the part of the movant;
(iii) [I]s the evidence relied upon not merely cumulative or impeaching;
(iv) [I]s the evidence material to the issues involved; and
(v) [W]ould the evidence probably result in acquittal at a new trial?

United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). See also United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987). "Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate." Chavis, 880 F.2d at 793.[3]

---

[3] The Fourth Circuit has left open the possibility that there could be an "exceptional 'rare case'" that would justify granting a new trial solely on the basis of newly discovered impeachment evidence." United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993), as amended (Apr. 30, 1993), aff'd, 511 U.S. 485 (1994). However, this exception is inapplicable here.

With regard to the fifth prong, the "district court is required to make a credibility determination." United States v. Lighty, 616 F.3d 321, 374 (4th Cir. 2010). In doing so, "a district court should focus on whether a jury probably would reach a different result upon hearing the new evidence." Id. Moreover, "the district court cannot view the proffered testimony in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial." Id. (quoting United States v. Kelly, 539 F.3d 172, 189 (3d Cir. 2008)).

A district court should exercise its discretion to grant a new trial "sparingly." United States v. Palin, 874 F.3d 418, 423 (4th Cir. 2017), cert. denied, 138 S. Ct. 1451 (2018), and cert. denied sub nom. Webb v. United States, 138 S. Ct. 1605 (2018).

III. DISCUSSION

The defense contends that the Government failed to produce evidence from which the jury properly could have convicted Defendant Malik on the Anti-Kickback Statute charges (Count One

and Counts Two to Thirteen),[4] the Travel Act charges (Count One and Counts Fourteen to Seventeen), and the Health Care Fraud and False Statement charges (Counts Nineteen to Twenty-Seven).

### A. Anti-Kickback Act Charges

Count One of the Superseding Indictment charges conspiracy to violate the Anti-Kickback Act ("AKA Object") and the Travel Act ("Travel Act Object"). As to the AKA Object, the Superseding Indictment charges a scheme to violate two provisions – 42 U.S.C. § 1320a-7b(b)(1)(A) and (b)(2)(A) – by paying and receiving kickbacks in return for referring patients of Advanced Pain Management Services ("APMS") to Accu Reference for urine toxicology testing services for which payment was made by Medicare.

42 U.S.C. § 1320a-7b(b)(1)(A) provides:

> [W]hoever knowingly and willfully solicits or receives any remuneration (including any kickback . . .) directly or indirectly, overtly or covertly, in cash or in kind --
> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may

---

[4] Specifically, Count One charged conspiracy to violate the Anti-Kickback Act and the Travel Act, and Count Two through Thirteen charged unlawful remuneration from the Anti-Kickback Act scheme.

> be made in whole or in part under a
> Federal health care program . . . .
>
> shall be guilty of a felony . . . .

42 U.S.C. § 1320a-7b(b)(2)(A) provides:

> [W]hoever knowingly and willfully offers or
> pays any remuneration (including any
> kickback . . .) directly or indirectly,
> overtly or covertly, in cash or in kind to
> any person to induce such person--
> (A) to refer an individual to a person for
> the furnishing or arranging for the
> furnishing of any item or service for
> which payment may be made in whole or
> in part under a Federal health care
> program . . . .
>
> shall be guilty of a felony . . . .

Counts Two through Thirteen charge substantive violations of 42 U.S.C. § 1320a-7b (b)(1)(A) based on the receipt of alleged kickbacks.

The defense contends after trial that (1) the Government failed to prove that Dr. Malik knew that Medicare, a federal health care program, would pay for the urine toxicology testing services referred by APMS to Accu Reference and (2) there was a referral of individuals – as distinct from urine specimens – for which the kickbacks were paid.

At trial, the defense had not contended that the Government must prove Dr. Malik's knowledge that the kickbacks were made in regard to payments made by a federal health care program.

6

Indeed, the Court essentially gave the defense's requested instruction for the elements of the crime, which did not include this obligation. Compare Trial Tr. at 40-41, ECF No. 294 (October 25, 2017) with Def.'s Requested Instructions at 150-151, ECF No. 204.

For example, the defense's requested instructions included the following elements of the crime, which was given by the Court in nearly this exact form:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant solicited or received remuneration, including any kickback or bribe, directly or indirectly, overtly or covertly, in cash or in kind from any person;
>
> Second: That the defendant solicited or received the remuneration to induce him to refer APMS patients for urine toxicology testing services by Accu Reference.
>
> Third: That the item or service was one for which payment may be made in whole or in part under a federal health care program; and
>
> Fourth: That the defendant acted knowingly and willfully.

Def.'s Requested Instructions at 150, ECF No. 204. These elements did not include a requirement that the Government had to prove that Dr. Malik knew the kickback was made for a service

7

for which payment would be made by a federal health care program.  The defense's requested instructions also included the following clarification which was given by the Court:

> The government is not required to prove the defendant had actual knowledge of the Anti-Kickback Statute or specific intent to violate it. The government must prove that the defendant willfully committed an act that violated the Anti-Kickback Statute.

Id. at 151.

At trial, the Government amply proved that 13% of the payments which generated the kickbacks were provided by Medicare.  The Court finds that the adverbs "knowingly" and "willfully" in 42 U.S.C. § 1320a-7b(b)(1)(A) modify "solicits" or "receives," and does not impose an additional mens rea requirement that Dr. Malik knew that the payments were made by a federal health care program.  See, e.g., United States v. Jones, 471 F.3d 535, 539–40 (4th Cir. 2006) ("Our holding today is also consistent with a large body of circuit precedent recognizing that a statutory mens rea requirement does not always apply to each factual element of a criminal offense.").  Rather, that there was a federal source of the payments is a requirement to meet the "jurisdictional hook" of the charge so as to establish a nexus adequate to impose federal jurisdiction.  United States v. Runyon, 707 F.3d 475, 490 (4th Cir. 2013).

8

Even if the Government had the obligation to prove that Dr. Malik knew of the federal source of the kickback payments, it met this burden. Indeed, $530,000 of the total four million in reimbursement payments that Accu Reference received for urine toxicology tests on APMS patients came from Medicare, and the testing for 13% of the 12,854 urine toxicology specimens submitted by APMS patients to Accu Reference were paid by Medicare. Moreover, Dr. Malik showed his knowledge that there were federal funds provided in regard to the treatments by his practice when he expressly excluded Medicare funded payments from pain cream prescriptions because he knew that Medicare would not pay for these medications.

Nor were those referrals generating kickbacks merely referrals of urine samples rather than individuals. The Government proved that employees of the kickback provider obtained the tested samples from individuals referred and did not just receive the urine samples. Indeed, the evidence showed that the kickback provider was physically set up inside APMS's offices, provided the materials for the testing, and received patients in the on-site space. The patients would go directly from an APMS physician to the on-site testing lab to provide a urine specimen. Accordingly, the Court does not find a constructive amendment of the statutory elements of the crime.

B. <u>The Travel Act</u>

Count One of the Superseding Indictment charges conspiracy to violate the Anti-Kickback Act ("AKA Object") and the Travel Act ("Travel Act Object"), and Counts Fourteen to Seventeen of the Superseding Indictment charge substantive violations of the Travel Act.

The Travel Act, 18 U.S.C. § 1952, provides that:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to--
>
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to perform—
>
> (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or
> (B) an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

The Government proved that Dr. Malik knowingly violated or agreed to violate a duty of fidelity under New Jersey law while

he was practicing medicine at APMS in Maryland.[5] The defense's position is the rule violated by Dr. Malik can apply only to a licensee and that the Government failed to prove at trial that Dr. Malik was a New Jersey licensed physician at the time he committed the offense.[6]

The Court does not agree. The evidence amply established that Dr. Malik was functioning as a physician in New Jersey at the relevant time and thus, was required to be a licensed physician. The jury could reasonably find that he was licensed based upon his actively and openly practicing medicine in New Jersey at the relevant time. The actions, together with his statements in New Jersey filings relating to his practice, amply justified a finding that he was a licensed New Jersey physician subject to the prescribed duty of fidelity to his patients.

---

[5] "A person commits a crime if he solicits, accepts or agrees to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which he is subject as . . . a . . . physician." N.J. Stat. Ann. § 2C:21-10.

[6] The Court instructed the jury that "[p]hysicians who are licensed in New Jersey have a duty of fidelity to their patients under New Jersey law to refrain from accepting compensation of any kind in exchange for referrals of patients or of prescriptions to another healthcare provider." Trial Tr. at 40-41, ECF No. 294 (Oct. 25, 2017).

C. <u>Anesthesia Related Charges</u>

Counts Nineteen through Twenty-Four of the Superseding Indictment charge Dr. Malik with health care fraud,[7] and Counts Twenty-Five through Twenty-Seven of the Superseding Indictment charge Dr. Malik with false statements relating to health care matters.[8]

The jury found that on several occasions, Dr. Malik falsely billed anesthesia services under the Current Procedural Terminology ("CPT") code 01992 - which represented that two physicians were in the room for the billed procedure - when only one physician was present in the room during the procedure.

Dr. Malik now contends that the evidence does not show that he personally made any such statement or aided-and-abetted the fraud scheme, relying on <u>United States v. Hayes</u>, 574 F.3d 460, 476 (8th Cir. 2009) (the defendant "could be convicted under an aiding-and-abetting theory" of violating 18 U.S.C. § 1035 if the government proved that he "committed an affirmative act to

---

[7]    18 U.S.C. § 1347 makes it a crime to "knowingly and willfully execute[], or attempt[] to execute, a scheme or artifice— (1) to defraud any health care benefit program."

[8]    18 U.S.C. § 1035(a) makes it a crime to, "in any matter involving a health care benefit program, knowingly and willfully . . . 2) make[] any materially false . . . statements or representations . . . in connection with the delivery of or payment for health care benefits, items, or services. . . ."

further [the principal's] offense.").

The trial evidence established that it was routine for only a single physician to be present in the procedure room when anesthesia was provided to patients in connection with therapeutic nerve blockers, and yet these procedures were nevertheless often submitted for billing showing that two physicians had been present.  See, e.g., Trial Tr. at 176, ECF No. 288 (October 17, 2017) (Dr. Grewal testifying that "100 percent of the time" the records reflected that there were two doctors in the room).

The scheme to falsely bill anesthesia related procedures dated back to the spring of 2009 and continued until summer of 2012, despite efforts of other physicians and billing personnel to raise the false billing with Drs. Malik and Sherlekar and persuade them to stop it.  The evidence showed that Dr. Malik voiced no objection when Dr. Sherlekar told him that he planned to bill separately for anesthesia services or to alter records to reflect that two physicians had been present for a procedure when that was not true.  The evidence also showed that on at least one occasion, Dr. Malik affirmatively agreed to allow Dr. Sherlekar to use his name on medical records to make it appear that Dr. Malik had been present for a procedure when he was actually located at a different office that day.  Moreover,

13

other doctors testified that Dr. Malik signed off on medical records for APMS for procedures he had not been present for. See Trial Tr. at 176, ECF No. 288 (October 17, 2017); Trial Tr. at 98-101, ECF N0. 289 (October 18, 2017); Trial Tr. at 62-64, ECF No. 290 (October 19, 2017).  And several witnesses testified they were either personally threatened by Dr. Malik or that they observed him threatening others with adverse consequences if the anesthesia billing fraud were disclosed.  See, e.g., Trial Tr. at 31-43, ECF No. 290 (October 19, 2017); Trial Tr. at 71-78, ECF No. 290 (October 19, 2017).

The evidence established specific instances of this fraudulent billing that make up Counts Twenty-One to Twenty-Seven.  For example, on January 3, 2012, Dr. Malik affirmatively authorized Dr. Sherlekar to use his name as the surgeon on procedures for which he was not present.  The evidence showed the following Google Chat exchange:

> [Dr. Sherlekar]: Thanks. I am using your name today as surgeon as we have 34 procedures here and 20 in Waldorf
>
> [Dr. Malik]: ok but you know I'm seeing patients in Hackettstown [New Jersey]
>
> Dr. Sherlekar: yes I know but with 54 procedures we need all three anesthesiologist in the mix. MK and I talked about it. I was going to use [S.O.].
>
> [Dr. Malik]: ok np[.]

See Gov.'s Opp. Ex. 15 (Trial Ex. GX 18(d)), ECF No. 342.

Dr. Malik's "ok" and "np" in the course of that Google Chat constituted assistance rendered by words, acts, encouragement, and support, thereby providing a far more than adequate basis for sustaining a finding of aider-and-abettor liability against him on these counts.

As another example, on March 30, 2011, Dr. Malik left the room during an anesthesia procedure that he was performing with Dr. Grewal. When Dr. Grewal billed the procedure reflecting that only a single physician was in the room during the procedure (because Dr. Malik had left the procedure), Dr. Sherlekar showed his displeasure that she had not billed for two physicians by sending an email that copied Dr. Malik, stating:

> I sent a united health care patient and PK told me that she did not do any anesthesia today as Malik was not there. This was a substantial loss of revenue to us today. The discogram itself would have generated more than enough on the sedation side. We need to create anesthesia records for it. I revised the report too. Can someone gently look into this please[.]

Gov.'s Opp. Ex. 14 (Trial Ex. GX 18(b)), ECF No. 342.

Indeed, there was evidence at trial to establish that Dr. Malik willfully and knowingly associated himself with the crime and sought by some act to help make the crime succeed. In other

words, the evidence proved that Dr. Malik was far more than a mere bystander, an uninvolved and inactive observer, or only a mere consenter of a billing scheme actively performed by others, and the jury could reasonably have made such an inference.

IV.  CONCLUSION

　　　Defendant Malik has not shown that he is entitled to a judgment of acquittal or to a new trial.  For the reasons set forth herein, the Court DENIES Atif B. Malik, M.D.'S Motion for a Judgment of Acquittal or a New Trial [ECF No. 283].

　　　SO ORDERED, this Monday, June 18, 2018.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　Marvin J. Garbis
　　　　　　　　　　　　　　　United States District Judge